**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ALISHA CLAIBORNE ex rel., L.D., a minor,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 10 C 7728** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | **Magistrate Judge Finnegan** |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alisha Claiborne filed an action seeking review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her application to recover

Supplemental Security Income ("SSI") on behalf of her minor daughter, L.D., under Title IX

of the Social Security Act. 42 U.S.C. § 1382c(a)(3)(C). On January 24, 2012, the Court

remanded the case to the Administrative Law Judge ("ALJ") for further evaluation.

*Claiborne ex rel., L.D. v. Astrue*, No. 10 C 7728, 2012 WL 205907, at *17 (N.D. Ill. Jan. 24,

2012). Plaintiff now seeks to recover her attorneys' fees and costs pursuant to the Equal

Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), arguing that the Commissioner's

position in defending the ALJ's decision was not "substantially justified." For the reasons

set forth here, Plaintiff's application for $13,372 in fees and $38.73 in costs is granted.

**DISCUSSION**

**I.      Attorneys' Fees**

Under the EAJA, a plaintiff is eligible to recover attorneys' fees if (1) she makes a

timely application for fees; (2) she is a "prevailing party"; (3) the government's position was

not "substantially justified"; and (4) no special circumstances makes an award unjust. 28 U.S.C. § 2412(d)(1)(A)-(B); *Seabron v. Astrue*, No. 11 C 1078, 2012 WL 1985681, at *1 (N.D. Ill. June 4, 2012). The Commissioner does not dispute that Plaintiff has satisfied these requirements and is entitled to an award of fees and costs in this case.

Plaintiff has submitted invoices showing that her attorneys worked a total of 73.1 hours, including time spent preparing the fee petition and reply brief. Specifically, Barry Schultz worked 24.6 hours; Lauren Rafferty worked 35.9 hours; and Julie Coen worked 12.6 hours. Two legal assistants worked an additional 1.3 hours. (Doc. 45-3; Doc. 49, at 15 n.10). Plaintiff seeks an attorneys' rate of $181.25 per hour based on the "All items" figure provided by the Chicago-Gary-Kenosha Consumer Price Index ("CPI") for May 2011, when her lawyers performed most of the work for this case. (Doc. 45 ¶ 12; Doc. 45-1). She also seeks $95 per hour for the legal assistant work. (*Id.* ¶ 15).

The Commissioner does not challenge the reasonableness of the number of hours, or the $95 hourly rate requested for the legal assistant work. The Commissioner does object, however, that the $181.25 hourly rate for Plaintiff's counsel is unjustifiably high. (Doc. 48, at 2-6). The Commissioner also insists that any award of fees must be made payable directly to Plaintiff, though it may be mailed to her "at the address of her attorney." (*Id.* at 1). The Court considers each argument in turn.

## A.    Hourly Rate

The EAJA provides that the amount of attorneys' fees awarded "shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living [since 1996, when the current version of

the Act was passed] or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Mathews-Sheets v. Astrue*, 653 F.3d 560, 562 (7th Cir. 2011) (quoting 28 U.S.C. § 2412(d)(2)(A)(ii)). This "rather chintzy" fee-shifting statute sets the $125 rate as "a presumptive ceiling; to justify a higher rate the plaintiff must point to inflation," or show that the case "requires for competent counsel someone from among a small class of specialists who are available only for [more than $125] per hour." *Id.* at 562, 563, 565.

Though the two methods of justifying a fee increase are set forth in the disjunctive under the EAJA, the Commissioner construes certain language in *Mathews-Sheets* to mean that lawyers must prove both propositions: (1) "inflation has increased the cost of providing adequate legal service," 653 F.3d at 563; and (2) no competent attorney in the area would handle the case for less than the amount requested in the fee petition. *Id.* at 565. In the Commissioner's view, Plaintiff is not entitled to a cost of living increase in this case because her lawyer has not established either criterion. (Doc. 48, at 3).

Plaintiff responds that *Mathews-Sheets* involved "an unusual and convoluted set of facts" not applicable here, and insists that the Commissioner's position with respect to rate increases is unworkable. (Doc. 49, at 5-7). She also notes that prior to this decision, the Commissioner "did not contest the appropriateness of a cost of living adjustment to EAJA fees[,]" and the Seventh Circuit "also assumed the appropriateness of a COLA." (Doc. 49, at 5) (citing *Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008) ("We believe that, given the passage of time since the establishment of the hourly rate, a cost-of-living adjustment is warranted. The Government does not object [ ] to the increase in

general...."). Given the parties' disagreement concerning the meaning and applicability of *Mathews-Sheets*, this Court begins with a detailed discussion of that decision.

### 1. *Mathews-Sheets*

The plaintiff's attorney in *Mathews-Sheets* sought a fee of $225 per hour based on his conclusory assertion that this amount constituted "the prevailing market rate." *Id.* at 563. Aside from citing to the CPI (which supported a rate of only $170 per hour), the lawyer provided no basis whatsoever for the requested fee increase, though he did raise the issue of inflation in a reply brief. *Id.* at 562-63. Even then, the lawyer failed to reference his particular circumstances that purportedly justified the "inflation adjustment."[1] *Id.* at 563-64. The district court declined to award the attorney more than $125 per hour, not because his arguments were weak, but because "the information in the reply brief about cost of living had been submitted 'too late.'" *Id.* at 563. The Seventh Circuit rejected the district court's rationale and remanded the case, explaining that "it was not improper for the lawyer to request the cost of living increase for the first time in his reply brief."[2] *Id.* at 564.

After stating that the "entire scope of the remand" would be the issue of inflation since that was the only factor mentioned by the lawyer, the court went on to discuss the other special factor that may justify an upward adjustment, namely, the limited availability of qualified attorneys. The court observed:

---

[1]  The court explained: "Suppose inflation had not affected the wages he pays his clerical employees, or had been offset by advances in law-office technology or changes in the standards and procedures of the Social Security Administration that made it cheaper to litigate claims for disability benefits." *Id.* at 564.

[2]  The court also remarked that a fee of $125 "seems awfully low," noting that even if the lawyer had received $170 per hour, the "total fee award would be only $9,010." *Id.* at 564.

It might seem that because the cost of living special factor is not automatic, the two enumerated special factors merge; the lawyer arguing for a cost of living increase must show limited availability of lawyers able to handle such a case. But that is not correct. Inflation might have an impact across a range of fields of practice that would make it difficult to hire a competent lawyer even in a rather routine case in a field of law by no means esoteric; in such a situation a fee above the statutory fee might well be justified. When inflation is not a factor, the lawyer does have to show that there is something special about the particular type of case that justifies the higher fee. *That* special factor has not been invoked in this case.

And so on remand the plaintiff's lawyer will have to show that without a cost of living increase that would bring the fee award up to $170 per hour, a lawyer capable of competently handling the challenge that his client mounted to the denial of social security disability benefits could not be found in the relevant geographical area to handle such a case.

*Id*. at 565 (emphasis in original).

### 2. Analysis

The Commissioner seizes on the last quoted sentence in *Mathews-Sheets* as evidence that even where lawyers show that inflation has increased the cost of providing adequate legal service, they must still demonstrate that, absent a fee award above the statutory $125 per hour, no competent attorney would be willing to handle the case. Several courts have imposed such a requirement based on the language in *Mathews-Sheets*. *See, e.g., Seabron*, 2012 WL 1985681, at *3 (indicating that lawyer must prove that higher fee is justified by both inflation and lack of competent counsel willing to take the case for the statutory amount); *Oatis v. Astrue*, No. 10 C 6043, 2012 WL 965104, at *1 (N.D. Ill. Mar. 20, 2012) (same); *Scott v. Astrue*, No. 08 C 5882, 2012 WL 527523, at *5 (N.D. Ill. Feb. 16, 2012) (same); *Heichelbech v. Astrue*, No. 3:10-CV-65-WGH-RLY, 2011 WL 4452860, at *2 (S.D. Ind. Sept. 26, 2011) (allowing plaintiff extra time to submit

evidence that "attorneys could not be found in the Evansville community and surrounding geographical area to handle a social security case for $125 an hour.").

Other courts, however, have declined to construe *Mathews-Sheets* as imposing this dual requirement in view of the language in the EAJA. In *Shipley v. Astrue*, No. 1:10-CV-1311-DML, 2012 WL 1898867 (S.D. Ind. May 23, 2012), for example, the court acknowledged that "a sentence in the *Mathews-Sheets* opinion, without context, could support th[e] position" that an attorney "must present proof that without a cost of living increase, no lawyer can be found in the relevant geographical area to competently handle the client's judicial challenge to the denial of disability benefits." *Id.* at *3. The court concluded, however, that such an argument "ignores the *two* bases under the EAJA that justify a rate higher than the $125 cap"; namely, "an increase in the cost of living *or* a special factor, such as the limited availability of qualified attorneys." *Id.* (emphasis in original). *See also Gonzalez v. Astrue*, No. 1:10-CV-00899-DML-TWP, 2012 WL 1633937, at *2 (S.D. Ind. May 9, 2012) (stating that the Commissioner had "plucked out" a particular sentence from the *Mathews-Sheets* decision and "conflated the two separate bases under the EAJA that justify a rate higher than the $125 cap.").

It is not clear to this Court whether the *Mathews-Sheets* court intended to require that lawyers seeking a fee increase prove both that (1) inflation has increased the cost of providing adequate legal service, and (2) no competent lawyer in the geographical area would take the case for less than the amount requested in the fee petition. Such a requirement would seem at odds with the disjunctive language in the EAJA. Moreover, the language that the Commissioner relies upon to support its position appears to be dicta; the Seventh Circuit remanded because the lower court never considered the lawyer's request

for a higher fee based on the cost of living, and instead erroneously found that the lawyer had forfeited this argument by not raising it until his reply brief.  653 F.3d at 563-64.

Regardless, the Court need not resolve whether *Matthews-Sheets* imposes the dual requirement suggested by the Commissioner since this Court is satisfied that Plaintiff has presented sufficient evidence to justify an hourly rate of $181.25 even if both requirements apply.  In that regard, Plaintiff's counsel submitted virtually identical evidence in two other cases in which the dual requirement was imposed, and the court determined that counsel was entitled to the higher fee.  *Seabron*, 2012 WL 1985681, at *4 (awarding a rate of $176.25 per hour); *Scott*, 2012 WL 527523, at *6 (awarding rates of $171.25 and $175 per hour (adjusted for the relevant time period)).  Moreover, in considering what is sufficient evidence, this Court is mindful that, given the low range of typical fee awards in these cases, "the court should not demand proof that could be more expensive to gather than the fees requested.  And because the government could be ordered to pay those 'fees on fees,' that result would not serve its interests either." *Gonzalez*, 2012 WL 1633937, at *2 n.1.

In support of the higher rate, Plaintiff's counsel provided evidence in the form of specific representations that many of his expenses have increased since 1996, including rent (a 3% per annum increase), salaries (a 5% per annum increase for legal staff and a 3% to 4% per annum increase for administrative staff) and health insurance (a 100% increase).  He also described "significant" increases in the costs of legal research tools such as Westlaw, relevant continuing legal education conferences, and even paper.  (Doc. 45 ¶ 17(b)).  The Commissioner objects that Plaintiff has not shown that her lawyer's cost increases are "*due to inflation* rather than simply due to choices that the law firm made." (Doc. 48, at 5) (quoting *Mathews-Sheets v. Astrue*, No. 1:08-CV-1426-WTL-DML, 2012 WL

566108, at *2 (S.D. Ind. Feb. 21, 2012)) (emphasis in original). In response to this challenge, Plaintiff's attorney has affirmed, "as an officer of the Court, that the increase in expenses . . . w[as] due to inflationary pressures and not due to counsel merely choosing to pay more" for the stated items. (Doc. 49, at 12). The Court accepts this representation and finds the evidence adequate to prove inflation. *See Gonzalez*, 2012 WL 1633937, at *2 (noting that the *Mathews-Sheets* court did not "prescribe any particular manner in which a lawyer might demonstrate" that inflation has increased the cost of providing adequate legal service).

Plaintiff also showed that since the 1996 amendment to the Act, her lead attorney's non-contingency hourly rate has increased 52% from $180 to $275. By comparison, the attorney has sought to increase his EAJA hourly rate by only 40%. (Doc. 45 ¶ 17(b)). In addition, Plaintiff submitted affidavits from two attorneys practicing Social Security disability law (Jan L. Kodner and Eric Schnaufer) who confirm that they have been awarded hourly rates of between $165 and $350 for these cases, well above the statutory amount. Specifically, the Social Security Administration has awarded Mr. Kodner fees amounting to between $165 and $300 per hour, and Mr. Schnaufer charges between $175 and $350 per hour for non-contingency EAJA work he performs for other attorneys. (Doc. 45-4; 45-5). Plaintiff's counsel further states that "[t]he $125.00 per hour rate set by Congress in 1996 for EAJA claims is not sufficient to attract competent counsel in the Chicago area in 2011." (Doc. 45, at 9).[3]

---

[3] Plaintiff aptly notes that she "could produce affidavits from 99% of the attorneys in the Chicago area stating they would not handle an EAJA case for $125.00 per hour, and yet, still Plaintiff would not have proven that 'no competent lawyer' would handle the case at that EAJA rate." (Doc. 49, at 7).

The Commissioner argues that the affidavits from Mr. Kodner and Mr. Schnaufer are insufficient to justify an hourly rate enhancement, claiming that the *Oatis* court rejected the same affidavits in declining to increase the $125 hourly fee. (Doc. 48, at 4-5). The cited opinion, however, does not mention those affidavits or explain why they would not support a cost of living increase. The court noted only that the plaintiff "continues merely to list awards received by her counsel in other cases and argues that based on the holding in *Mathews-Sheets* alone, $170 per hour is reasonable." 2012 WL 965104, at *1. As noted, Plaintiff has provided much more evidence to support a rate increase in this case. Indeed, in her reply brief, Plaintiff submitted additional affidavits from attorneys Frederick J. Daley, Jr. and David F. Traver, who also practice in the Social Security arena. Both attorneys attest that they do not represent claimants without an appropriate cost of living increase.[4] (Doc. 49-2 ¶ 8; Doc. 49-3 ¶ 6).

The Court finds that Plaintiff is entitled to an upward adjustment in the hourly rate to $181.25, and awards her $13,372.84 in attorneys' fees.

---

[4]    Plaintiff also argues that her attorneys are entitled to higher fees because claimants win their cases in court only 54% of the time, making the "effective hourly rate" a mere $67.50 (54% of the $125 statutory cap). (Doc. 45, at 9-10). As the *Seabron* court explained, Plaintiff "does not provide any evidence that Congress took this into account when it determined the $125 per hour rate[, so] the cost of living adjustment to the EAJA is not reasonably warranted on those facts alone." 2012 WL 1985681, at *3 n.2. This argument also ignores the fact that counsel in such cases are not limited to EAJA fees. They also have contingent fee arrangements so potentially may recover up to 25% of all past due benefits that are awarded. (Doc. 45-2). (*See* Affidavit of Frederick Daley, Doc. 49-2 ¶ 10) ("Indeed, I do not generally represent any clients for just an EAJA fee at $170 an hour, let alone $125. We evaluate cases based on risk/reward and opt for the meritorious ones that have past-due benefit potential to pay a fee under 42 U.S.C. § 406(b) well above any EAJA fee.").

**B.     Payment to Attorneys**

The introductory paragraph to the Commissioner's response brief asserts that "[a]ny fees awarded belong to Plaintiff and must be made payable to Plaintiff, but may be mailed to Plaintiff at the address of her attorney."  (Doc. 48, at 1).  Plaintiff claims that she will address this issue in her reply brief, but never does.  (Doc. 49, at 1).  For reasons set forth in this Court's opinion in *Tadros v. Astrue*, No. 10 C 7074, 2012 WL 965090 (N.D. Ill. Mar. 21, 2012), the fees are awarded to Plaintiff and she is to be identified as the payee for purposes of facilitating the Treasury Department's search for possible offsets.  *Id.* at *4 n.2. Since Plaintiff has assigned any fee award to her attorney, however, the Commissioner is to evaluate the propriety of directing payment to Plaintiff's attorney pursuant to that assignment after this Court has issued an order awarding attorneys' fees under the EAJA and the search for offsets has been completed.

**II.     Costs**

Plaintiff requests $38.73 in costs consisting of $17.13 for "Federal Express filing of Complaint" and $21.60 for 216 pages of copies at $.10 per page.  The Commissioner does not dispute that these costs are allowable under the EAJA and 28 U.S.C. § 1920, and Plaintiff is thus awarded the full amount.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Attorney's Fees is granted in the amount of $13,411.57 ($13,372.84 in fees plus $38.73 in costs).

ENTER:

Dated: July 6, 2012

_Sheila Finnegan_
SHEILA FINNEGAN
United States Magistrate Judge